IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Steven H. Matthews,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____ | Civil Action No. 8:08-1919-TLW-BHH<br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

  This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

  The plaintiff, Steven H. Matthews, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

### **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

  The plaintiff was 52 years old at the time of the Administrative Law Judge's (ALJ) decision. (R. at 59.) The plaintiff has a high school education (R. at 74) and has relevant work experience as a carpenter, maintenance worker, and supervisor (R. at 70,79, 388-91). He claims he became disabled on April 15, 2004, due to pain in his back, legs, and right hand, depression and high cholesterol. (R. at 69.) He also claims he stopped working on that date because of his disabilities and because he was laid off at the same time. (R. at 69.)

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff protectively filed applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) on July 19, 2004. (R. at 59-61, 365-68.)  His applications were denied in initial and reconsidered determinations.  (R. at 33-46, 369-80). the plaintiff appeared before an ALJ at a *de novo* hearing on August 2, 2007.  (R. at 381-454).  In a decision dated September 13, 2007, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (R. 14-23.)    As the Appeals Council denied the plaintiff's request for review (R. at 4-6), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> (2)    The claimant has not engaged in substantial gainful activity since April 15, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq*).
>
> (3)    The claimant has the following severe impairment: lower extremity pain (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of medium work.
>
> (6)    The claimant is capable of performing past relevant work as a carpenter, heating/air condition maintenance and supervisor.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> (7)    The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2004, through the date of this decision (20 CFR. 404.1520(f) and 416.920(f)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

3

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give the opinion of his treating

4

physicians controlling weight and (2) failing to find that his back condition constituted a "severe" impairment. The Court will address each objection in turn.

I. **TREATING PHYSICIAN**

### A.     Opinions of Dr. William E. Durrett, Jr.

The plaintiff first contends that the ALJ failed to give the opinions of his treating physician, Dr. William E. Durrett, Jr., controlling authority. The plaintiff was seen by Dr. Durrett through 2007 for back pain, primarily on his left side. (R. at 114-31.) On these visits, the plaintiff received left lumbar injections at L2, L3, L4 and L5. *Id*.

On July 31, 2007, Dr. Durrett completed a Medical Opinion Questionnaire regarding the plaintiff's ability to do work-related activities. (R. at 111-12.) In the questionnaire, Dr. Durrett wrote that the plaintiff was able to lift and carry less than 10 pounds on an occasional or frequent basis; that the plaintiff's maximum ability to stand during an 8-hour day was less than 2 hours; that the plaintiff's maximum ability to sit during an 8-hour day was less than 2 hours; and that the plaintiff was able to sit for no more than 15 minutes before needing to change positions. *Id*. Dr. Durrett also indicated that the plaintiff's physical limitations were affected in the areas of reaching, handling, fingering, feeling and pushing/pulling, and that the plaintiff's ability to function in these areas was "decreased." Dr. Durrett stated that it was his opinion that the plaintiff would likely miss more than three days a month from work due to his impairments and/or treatments. *Id*.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face

of persuasive contrary evidence."   *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination.  SSR 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *See Blalock*, 483 F.2d at 775.

Regarding Dr. Durrett's opinion, the ALJ found

> Dr. Durrett's opinion that the claimant has severe degenerative disc disease contradicts his own assessment in the treatment notes as well as the impression of Dr. de Andino and the radiologists who read the MRI's. Dr. Durrett's treatment notes do not report strength deficits, muscle spasm or muscle atrophy, and it appears that his opinion is based on the claimant's subjective report. The functional limitations indicated by Dr. Durrett are not supported by his own treatment notes and are inconsistent with the essentially unremarkable workup, as reported by Dr. de Andino and Dr. Fields, and I give Dr. Durrett's opinion very little weight.

(R. at 21.)

The plaintiff complains that the ALJ mistakenly concluded that Dr. Durrett's opinion was inconsistent with his own treatment notes.  The plaintiff argues that nowhere in Dr. Durrett's notes does he ever suggest that the plaintiff does *not* have degenerative disc disease. To that end, the plaintiff emphasizes that Dr. Durrett made that precise diagnoses on several occasions.  (R. at 114, 1147, 118, 121, 124, 129, 132.)

The Court generally agrees.  It appears that the ALJ has overreached in concluding that Dr. Durrett's opinion was somehow inconsistent with his own treating notes.  The ALJ does not identify anything in Dr. Durrett's notes which could be characterized as

"inconsistent" with his ultimate opinion. The ALJ merely states that his notes are silent as to strength deficits, muscle spasm or muscle atrophy, and functional limitations. (R. at 21.) Silence is not the same as inconsistency.

As stated, a treating physician's opinion should be given controlling weight so long as it is "not *inconsistent*" with other substantial evidence. There is no requirement that the opinion be perfectly reflected or affirmatively *consistent* with the medical notes of the physician, as suggested by the ALJ. "*Not* inconsistent" and "consistent" are different standards:

> The "not inconsistent" standard presumes the opinion's prominence and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight. Under the standard imposed by the ALJ, the opinion only has controlling weight if the record supports it.

*Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1100-01 (E.D. Wis. 2001). To the extent the ALJ required the presence of substantial evidence from Dr. Durrett's notes which was precisely identical to his questionnaire opinion, he demanded too much.

Dr. Durrett repeatedly diagnosed the plaintiff with severe disc disease (R. at 114, 1147, 118, 121, 124, 129, 132) and the fact that the precise functional limitations were not previously detailed does not render the notes and the opinion clearly inconsistent, as the law requires.

But to the Court, the ALJ's decision to diminish the weight given Dr. Durrett's opinion, did not turn solely, or even principally, on whether or not Dr. Durrett's opinion was consistent with his treatment notes. Rather, a close reading of the decision suggests that the ALJ was particularly persuaded by other evidence of record indicating that the plaintiff's disc disease was simply not severe and that his limitations were less than described by Dr. Durrett.

In that regard, the ALJ highlighted a March 9, 2007, MRI, in which a radioligist, Dr. Anthony L. Toomer observed, "minimally bulging annuli throughout the lumbar spine but no

7

neurologically significant degenerative disk disk disease . . . minimal facet joint changes in the lumbar spine at L3-S1." (R. at 21, 186.) The ALJ further observed that Dr. Durrett's view of the MRI was that the conditions observed "could be responsible for a portion of [the plaintiff's] lower back pain and paraverebral pain *but not necessarily his lower extremity pain* . . . ." (R. at 139 (emphasis added).) The ALJ also concluded that the March 2007 MRI reflected essentially no change from one performed in April 2004. (R. at 21.) Ultimately, the ALJ emphasized Dr. Edwin Martinez de Andino's characterization of the plaintiff's lumbar disc disease as "mild" and that Dr. Martinez de Andino reported that the MRI showed "no obvious objective findings to explain [the plaintiff's] symptoms." *Id*.

Between the conclusions of the radiologist and Dr. Martinez de Andino, the ALJ had sufficient other substantial medical evidence of record to discount Dr. Durrett's opinion regarding the general severity of the plaintiff's disc disease. As stated, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. The plaintiff, however, argues that the opinions of Drs. Martinez de Andino and Toomer do not constitute substantial contrary evidence for two reasons.

First, the plaintiff contends that Dr. Martinez de Andino and Dr. Toomer expressed no opinions concerning the plaintiff's functional limitations, such that their assessments should not even be considered competing opinions. While this observation is true as to Dr. Toomer, Dr. Martinez de Andino did make functional findings, including that the plaintiff had full active and passive range of motion of all joints; good flexion, extension, and lateral flexion of the lumbar spine; no SI joint tenderness to palpation; 5/5 motor strength; normal sensation; and symmetrical deep tendon reflexes. (R. at 333.) These findings were noted by the ALJ. (R. at 19.) Accordingly, it was appropriate for the ALJ to consider Dr. Martinez de Andino's assessment as a competing opinion as well as substantial evidence upon which to base a diminution in the weight accorded Dr. Durrett's opinion. Dr. Martinez de

Andino both considered the plaintiff's functional limitations and reviewed the plaintiff's MRI and came to a differing conclusion than Dr. Durrett.

The plaintiff also argues that the ALJ is not qualified to interpret the MRIs or draw any conclusions regarding the plaintiff's functional ability based on such tests. Generally, the Court agrees. "An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). As a lay person, an ALJ is "simply not qualified to interpret raw medical data *in functional terms* . . . ." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (emphasis added); *see also Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996) (stating that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("Because an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony.").

Without some expert interpretation of the evidence, the ALJ cannot read the MRI results or arrive at some conclusion about what they mean, either relative to other evidence or in regards to the plaintiff's limitations. That is not a determination that a lay adjudicator can make. *See Figueroa v. Secretary of Health, Ed. and Welfare*, 585 F.2d 551, 554 (1st Cir.1978) ("[A] layman is in no position to make any such determination on this record. It would have been appropriate for the administrative law judge to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question.")

The Court has been vigilant to ensure that ALJs are not interpreting raw medical data, such as an MRI, and has in the past remanded for precisely that reason. And, in this case, some of the ALJ's consideration comes problematically close to that line. Specifically,

the ALJ concluded that there was essentially no change from the April 2004 MRI to the March 2007. (R. at 17.) If that conclusion of the ALJ was, in fact, based on a physician's assessment, the ALJ did not cite it. While the written interpretation of the two MRIs by the respective radiologists might have been comparable in language, and while the ALJ has most certainly developed substantial experience with this type of evidence, the conclusion is probably out of bounds for its tendency to interpret, rather than weigh, the evidence.

But, ultimately, the ALJ expressly relied, not on his own assessment, but on Dr. Toomer's and Dr. Martinez de Andino's interpretations of the MRI results. (R. at 21.) He recounted their verbatim language and, other than the comment noted above, did not personally editorialize in regards to medical data. Combined with Dr. Martinez de Andino consideration of the plaintiff's functional limitations, the Court can find no technical error in the ALJ's determination that he had substantial evidence to diminish Dr. Durrett's opinion. Simply because the plaintiff can articulate good reason why Dr. Durrett should still be believed over Dr. Martinez de Andino does not render the ALJ's reliance on the latter's opinion erroneous because, as discussed, Dr. Martinez de Andino's opinions constitute substantial contrary evidence. *See Blalock*, 483 F.2d at 775.

### B.    Opinions of Dr. Mark Roberts

For the same reasons, the Court declines to recommend remand for any error in the ALJ's consideration of Dr. Mark Roberts' opinion. Dr. Roberts treated the plaintiff on October 10, 2006, December 7, 2006, and April 17, 2007. (R. at 155-162.) On July 2, 2007, Dr. Roberts completed a disability questionnaire for the plaintiff. (R. at 53-54.) Dr. Roberts opined that the plaintiff was unable to work more than 20 hours per week; that the plaintiff's condition was likely to cause incapacitating pain at least several times a month to the point that he would be unable to perform gainful activity at least three days a month; that the plaintiff's condition substantially limited his ability to sit throughout a day in a normal sitting position; and that the plaintiff's condition limited his ability to stand and walk for no

more than a few hours a day. (R. at 154.) Dr. Roberts wrote the plaintiff a prescription for a cane on July 23, 2007. (R. at 163.)

The ALJ discounted the opinion for Dr. Robert's for his failure to include a narrative with his medical questionnaire responses and because it was in conflict with Dr. Martinez de Andino's diagnosis. The Court believes that the latter ground constitutes substantial evidence. Namely, Dr. Roberts concluded that the plaintiff had "inflammatory arthritis," but Dr. Martinez de Andino, an arthritis specialist, made no such diagnoses. As with Dr. Durrett's opinion, Dr. Martinez de Andino's opinion constitutes substantial contradictory evidence from which to depart from Dr. Robert's opinion. The plaintiff makes no real argument that Dr. Martinez de Andino's opinion should not so qualify. (See Pl. Brief at 20-21.)

Accordingly, the Court concludes that the ALJ had substantial evidence from which to decline to extend the opinions of the plaintiff's treating physicians, Drs. Durrett and Roberts, controlling weight.

## II.     Severe Impairment

Finally, the plaintiff contends that the ALJ erred in not finding that his back condition was a severe impairment. The plaintiff's burden to show a severe impairment is not an exacting one. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd 2004).

The ALJ thoroughly evaluated the evidence related to the plaintiff's alleged degenerative disc disease. (R. at 19-21.) The ALJ repeatedly found that the medical record did not reveal significant problems with the plaintiff's back. *Id.* As stated, the ALJ cited Dr. Martinez de Andino's opinion that the plaintiff's spine was "completely unrmarkable" and that the MRIs showed only "mild disc and facet joint disease . . . no evidence of significant spinal stenosis." (R. at 19.) Critically, and as discussed, the ALJ made sure to note that even Dr. Durrrett concluded that the MRI failed to show any "obvious objective findings to explain the plaintiff's symptoms." (R. at 21.) Although, the ALJ's entire consideration came after he had already determined that the condition was non-severe, he, in fact, did consider evidence of the impairment and its effects.

Moreover, the plaintiff has not explained what additional limitations he would have suffered beyond those already determined by the ALJ. Of course, the plaintiff contends that the limitations prescribed by Dr. Durrett would be applicable, but as already concluded, the ALJ had substantial evidence to reject those limitations. The characterization of the back impairment as "severe" would not alter that determination. In other words, the ALJ was justified in rejecting Dr. Durrett's recommended limitations regardless of whether the ALJ ever concluded that the plaintiff's back condition was severe or not. Therefore, any error by the ALJ regarding classification of the plaintiff's back pain as non-severe would ultimately prove harmless in this case. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where ALJ erred in evaluating claimant's pain, because "he would have reached the same result notwithstanding his initial error").

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

March 24, 2009
Greenville, South Carolina